1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   J&J SPORTS PRODUCTIONS, INC.,              No.  2:16-cv-715-TLN-KJN

12                  Plaintiff,

13           v.                                 ORDER AND FINDINGS AND
                                                RECOMMENDATIONS
14   RUBEN CONTRERAS MACHUCA &
     SILVIA OCHOA GOMEZ,
15
                  Defendants.
16

17

18           Presently before the court is plaintiff J&J Sports Productions, Inc.'s ("plaintiff") motion

19   for entry of default judgment against defendants Ruben Contreras Machuca and Silvia Ochoa

20   Gomez, both individually and doing business as Centenial Ranch Sports Bar and Grill

21   (collectively "defendants").[1]  (ECF No. 11.)  After defendants failed to file an opposition to the

22   motion in accordance with Local Rule 230(c), the October 6, 2016 hearing was vacated, and the

23   motion was submitted on the record and written briefing pursuant to Local Rule 230(g).  (ECF

24   No. 13.)

25           For the reasons stated below, the court recommends that plaintiff's motion for default

26   judgment be granted in part, that judgment be entered in plaintiff's favor, and that plaintiff be

27   _____

28   [1] This motion was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(19).

                                                1

1    awarded a total judgment of $9,000.00.

2    <u>BACKGROUND</u>

3          Plaintiff initiated this action on April 6, 2016, alleging claims under 47 U.S.C. § 605; 47

4    U.S.C. § 553; and Cal. Bus. & Prof. Code §§ 17200 *et seq.*, in addition to a state law tort claim

5    for conversion.  (<u>See generally</u> Complaint, ECF No. 1 ["Compl."].)  Defendants are the owners,

6    operators, licensees, permittees, persons in charge, and/or persons with control of the commercial

7    establishment doing business as Centenial Ranch Sports Bar and Grill ("Centenial Bar"), which is

8    located at 10408 Franklin Boulevard, in Elk Grove, California.  (Compl. ¶¶ 7-10.)  Plaintiff was

9    granted by contract "the exclusive nationwide commercial distribution (closed-circuit) rights to

10   '*The Fight of the Century*' *Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight*

11   *Program* , telecast nationwide on Saturday, May 2, 2015" ("Plaintiff's Program"), which included

12   the distribution rights to "all under-card bouts and fight commentary encompassed in the

13   television broadcast of the event."  (<u>Id.</u> ¶ 18.)

14         Plaintiff alleges that on May 2, 2015, defendants either specifically directed the

15   employees of Centenial Bar "to unlawfully intercept and broadcast Plaintiff's Program" at

16   Centenial Bar, or that the actions of Centenial Bar employees are directly imputable to defendants

17   "by virtue of their acknowledged responsibility for the actions of [Centenial Bar]."  (Compl. ¶

18   15.)  Plaintiff further alleges that "the unlawful broadcast of Plaintiff's Program, as supervised

19   and/or authorized by Defendants . . . resulted in increased profits for [Centenial Bar]."  (<u>Id.</u> ¶ 16.)

20         In its complaint, plaintiff requested statutory damages of $110,000 for defendants'

21   violation of 47 U.S.C. § 605, as well as recovery of all costs and reasonable attorneys' fees.

22   (Compl. at 10.)  The complaint further sought statutory damages of $60,000 for defendants'

23   violation of 47 U.S.C. § 553, as well as recovery of all costs and reasonable attorneys' fees.  (<u>Id.</u>)

24   The complaint also sought compensatory, exemplary, and punitive damages; reasonable

25   attorneys' fees; and costs of suit for defendants' tortious conversion of Plaintiff's Program.  (<u>Id.</u>)

26   Finally, the complaint requested restitution, declaratory relief, injunctive relief, attorneys' fees,

27   and costs of suit for defendants' violation of sections 17200 *et seq.* of the California Business and

28   Professions Code.  (<u>Id.</u> at 11.)

1    After defendants were properly served with process and failed to appear in the action, the

2    Clerk of Court, upon plaintiff's request, entered defendants' default.  (ECF Nos. 6-9.)  The instant

3    motion for entry of default judgment followed.  (ECF No. 11.)

4    <u>LEGAL STANDARD</u>

5    Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party

6    against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend

7    against the action.  <u>See</u> Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not

8    automatically entitle the plaintiff to a court-ordered judgment."  <u>PepsiCo, Inc. v. Cal. Sec. Cans</u>,

9    238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing <u>Draper v. Coombs</u>, 792 F.2d 915, 924-25

10   (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies

11   within the district court's sound discretion.  <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir.

12   1980).  In making this determination, the court considers the following factors:

13
     (1) the possibility of prejudice to the plaintiff, (2) the merits of
     plaintiff's substantive claim, (3) the sufficiency of the complaint,
14   (4) the sum of money at stake in the action[,] (5) the possibility of a
     dispute concerning material facts[,] (6) whether the default was due
15   to excusable neglect, and (7) the strong policy underlying the
     Federal Rules of Civil Procedure favoring decisions on the merits.
16

17   <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

18   As a general rule, once default is entered, well-pled factual allegations in the operative

19   complaint are taken as true, except for those allegations relating to damages.  <u>TeleVideo Sys., Inc.</u>

20   <u>v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing <u>Geddes v. United Fin.</u>

21   <u>Group</u>, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); <u>accord</u> <u>Fair Housing of Marin v. Combs</u>,

22   285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pled allegations in the complaint

23   are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings,

24   and claims which are legally insufficient, are not established by default."  <u>Cripps v. Life Ins. Co.</u>

25   <u>of N. Am.</u>, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388

26   (9th Cir. 1978)); <u>accord</u> <u>DIRECTV, Inc. v. Hoa Huynh</u>, 503 F.3d 847, 854 (9th Cir. 2007) (stating

27   that a defendant does not admit facts that are not well-pled or conclusions of law); <u>Abney v.</u>

28   <u>Alameida</u>, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be

1    entered on a legally insufficient claim").  A party's default does not establish the amount of

2    damages.  Geddes, 559 F.2d at 560.

3    DISCUSSION

4            Appropriateness of the Entry of Default Judgment Under the Eitel Factors

5                    1.  Factor One: Possibility of Prejudice to Plaintiff

6            The first Eitel factor considers whether the plaintiff would suffer prejudice if default

7    judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting

8    a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiff would face

9    prejudice if the court did not enter a default judgment, because plaintiff would be without another

10   recourse against defendants.  Accordingly, the first Eitel factor favors the entry of a default

11   judgment.

12                   2.  Factors Two and Three: The Merits of Plaintiff's Substantive Claims

13                       and the Sufficiency of the Complaint

14           The court considers the merits of plaintiff's substantive claims and the sufficiency of the

15   complaint together because of the relatedness of the two inquiries.  The court must consider

16   whether the allegations in the complaint are sufficient to state a claim on which plaintiff may

17   recover.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

18           In its motion for default judgment, plaintiff only seeks relief on two of its claims – its

19   claim for violation of 47 U.S.C. § 605 and its conversion claim.  (ECF No. 11-1.)  Accordingly,

20   the court only addresses those claims and declines to consider whether plaintiff's remaining

21   claims are sufficiently pled and have merit.

22                              a. Liability under 47 U.S.C. § 605

23           In its motion for default judgment, plaintiff seeks statutory damages pursuant to its claim

24   under 47 U.S.C. § 605.  That statute prohibits the unauthorized interception, reception,

25   publication, or divulgence of interstate radio communications.  See 47 U.S.C. § 605(a).

26   Specifically, it provides, in pertinent part, that:

27                   No person not being authorized by the sender shall intercept any
                     radio communication and divulge or publish the existence, contents,
28                   substance, purport, effect, or meaning of such intercepted

                                                        4

communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

The Ninth Circuit Court of Appeals has determined that satellite television signals are covered communications under 47 U.S.C. § 605(a). DIRECTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008). The scope of section 605(a) is less clear with respect to transmissions intercepted from a cable system, which are expressly covered under 47 U.S.C. § 553(a). Section 553(a) states, in relevant part: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

Here, plaintiff has not alleged whether defendants intercepted Plaintiff's Program in the course of transmission over a cable system or by satellite television signal. A split of authority has developed as to whether the unlawful interception of a broadcast in the course of transmission over a cable system is covered by both sections 553(a) and 605(a) , or whether it is only covered by section 553(a). Compare United States v. Norris, 88 F.3d 462, 466-69 (7th Cir. 1996) and TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 204-07 (3d Cir. 2001) (only covered by section 553(a)) with Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 132-33 (2d Cir. 1996) (covered by both sections 553(a) and 605(a)).

At a minimum, plaintiff's complaint and evidence support a conclusion that defendants intercepted, without authorization, a transmission of Plaintiff's Program and broadcasted it to their patrons. Plaintiff has supplied proof of defendants' violation through an affidavit of a private investigator who entered defendants' establishment on May 2, 2015, and viewed

5

1   Plaintiff's Program.  (See Affidavit of Ilir Nushi ["Nushi Aff."], ECF No. 11-3.)  The

2   investigator's affidavit indicates that Plaintiff's Program was displayed on two (2) flat screen

3   televisions he observed after entering Centenial Bar and provides details of the portions of

4   Plaintiff's Program that he viewed.  (Id.) (noting the names, attire, and actions of fight

5   participants, the number of televisions, and other distinguishing features of the establishment).

6   Accordingly, plaintiff has established that defendants violated the gravamen of 47 U.S.C. § 605.

7        However, plaintiff essentially concedes in its motion for default judgment that the

8   operative complaint and the record contain no allegations or evidence substantiating the nature of

9   the transmission that was intercepted by defendants.  (ECF No. 11-1 at 8.)  Nevertheless, plaintiff

10  argues that, although it was unable to allege the precise means of transmission in this case (i.e.,

11  transmission over a cable system or satellite broadcast), it should not be prejudiced for its

12  inability to do so in light of defendants' failure to respond to the complaint.  (Id.)  The court

13  agrees that, under the circumstances of this case, where plaintiff was deprived of the opportunity

14  to conduct discovery regarding the exact type of transmission at issue because of defendants'

15  failure to appear in the action, plaintiff should not suffer the resulting prejudice.  In any event, the

16  split of authority discussed above has little practical impact in this case, because, as discussed

17  below, the court recommends the award of statutory damages that are towards the lower end of

18  the spectrum of statutory damages available under both section 553 and section 605.

19       Consequently, the court finds that plaintiff's claim under 47 U.S.C. § 605 is sufficiently

20  pled and has merit.

21                           b. Conversion

22       The Ninth Circuit Court of Appeals has held that a claim for conversion in California has

23  three elements: "ownership or right to possession of property, wrongful disposition of the

24  property right and damages."  G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc.,

25  958 F.2d 896, 906 (9th Cir.1992).  In this case, plaintiff purchased the licensing rights to

26  Plaintiff's Program, defendants aired Plaintiff's Program without plaintiff's permission, and

27  plaintiff alleges that it suffered damages as a result of this airing, because it was deprived of the

28  commercial license fee that would ordinarily be charged for permitting defendants to show

1    Plaintiff's Program in their establishment.  (Compl. ¶¶ 18-20, 32-35.)  Therefore, plaintiff's

2    conversion claim is sufficiently pled and has merit.

3           Accordingly, the second and third Eitel factors favor the entry of a default judgment.

4                      3.   Factor Four: The Sum of Money at Stake in the Action

5           Under the fourth factor cited in Eitel, "the court must consider the amount of money at

6    stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at

7    1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D.

8    Cal. 2003).  By its motion for default judgment, plaintiff seeks a judgment in the total amount of

9    $113,000.00 against defendants, consisting of $110,000.00 for violation of 47 U.S.C. § 605 and

10   $3,000.00 for the tort of conversion.

11          Given the substantial amount of money at stake, this factor could weigh against the entry

12   of default judgment.  See, e.g., Joe Hand Promotions v. Streshly, 655 F. Supp. 2d 1136, 1136

13   (S.D. Cal. 2009) (proposed award amount of $100,875.00 was "manifestly excessive under

14   existing law"); J & J Sports Productions. v. Cardoze, 2010 WL 2757106, at *5 (N.D. Cal. July 9,

15   2010) ("a large sum of money at stake would disfavor default judgment," such as damages

16   totaling $114,200.00); see also Board of Trustees of the Sheet Metal Workers v. Vigil, 2007 WL

17   3239281, at *2 (N.D. Cal. Nov. 1, 2007) ("[D]efault judgment is disfavored if there were a large

18   sum of money involved.").  However, the court declines to recommend judgment in the large

19   amount requested.  Consequently, when the judgment amount is appropriately reduced, as

20   explained below, the fourth Eitel factor also weighs in favor of the entry of default judgment.

21                    4.   Factor Five: The Possibility of a Dispute Concerning Material Facts

22          The court may assume the truth of well-pled facts in the complaint (except as to damages)

23   following the clerk's entry of default, and defendants have not appeared to dispute any such facts.

24   Thus, there is no likelihood that any genuine issue of material fact exists.  See, e.g., Elektra

25   Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in

26   a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is

27   no likelihood that any genuine issue of material fact exists"); accord Philip Morris USA, Inc., 219

28   F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Accordingly, the fifth Eitel factor favors

1  the entry of default judgment.

2       5.  <u>Factor Six: Whether Default was Due to Excusable Neglect</u>

3        In this case, there is no indication in the record that defendants' default was due to

4  excusable neglect.  Defendants were not only served with the complaint, but also the request for

5  entry of default and the motion for default judgment.  (ECF Nos. 8, 11.)  Indeed, despite having

6  been provided with multiple opportunities to appear and defend their interests, defendants

7  apparently declined to do so.  Accordingly, the sixth <u>Eitel</u> factor favors the entry of a default

8  judgment.

9       6.  <u>Factor Seven: The Strong Policy Underlying the Federal Rules of Civil</u>

10         <u>Procedure Favoring Decisions on the Merits</u>

11        "Cases should be decided upon their merits whenever reasonably possible."  <u>Eitel</u>, 782

12  F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing

13  alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action.

14  <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177; <u>see also</u> <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F.

15  Supp. 2d 1039, 1061 (N.D. Cal. 2010).  Accordingly, although the court is cognizant of the policy

16  in favor of decisions on the merits—and consistent with existing policy would prefer that this

17  case be resolved on the merits—that policy does not, by itself, preclude the entry of default

18  judgment.

19        In sum, upon careful consideration of all the <u>Eitel</u> factors, the court concludes that

20  plaintiff is entitled to a default judgment against defendants.  All that remains is a determination

21  of the specific relief to which plaintiff is entitled.

22       <u>Terms of the Judgment to be Entered</u>

23        After determining that a party is entitled to the entry of default judgment, the court must

24  determine the terms of the judgment to be entered.  As stated above, plaintiff requests judgment

25  in the total amount of $113,000.00 against defendants, consisting of $110,000.00 for violation of

26  47 U.S.C. § 605 and $3,000.00 for the tort of conversion.  Although defendants failed to object to

27  the amount requested, one of the factors the court is free to consider in exercising its discretion in

28  granting default judgment is the sum of money to be awarded.  <u>See</u> <u>J & J Sports Prods., Inc. v.</u>

8

1   Jurado, 2011 WL 6153605, at *3 (E.D. Cal. Dec. 12, 2011).  Considering plaintiff's briefing and

2   the record in this case, the court recommends that damages be awarded, but not in the amount

3   requested.

4   1. Damages Under 47 U.S.C. § 605

5   For purposes of a 47 U.S.C. § 605 claim, a plaintiff may elect to seek either actual or

6   statutory damages.  47 U.S.C. § 605(e)(3)(C)(i)(I & II).  The statute generally provides for

7   statutory damages for each violation of not less than $1,000 and not more than $10,000, as the

8   court considers just.  47 U.S.C. § 605(e)(3)(C)(i)(II).  Plaintiff seeks the maximum award of

9   $10,000.  The statute also authorizes enhanced statutory damages of not more than $100,000 if

10  the court finds the violation was "committed willfully and for purposes of direct or indirect

11  commercial advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(ii).[2]  Here, plaintiff

12  seeks the maximum of $100,000 in enhanced statutory damages, for a total of $110,000 in

13  statutory damages.  In support of its request, plaintiff argues that the requested amount is justified

14  primarily because of the need to deter broadcast piracy and the significant harm done to plaintiff's

15  business as a result of such activities.  Although deterrence is certainly an important

16  consideration, the court finds plaintiff's requested damages to be grossly excessive and

17  unsupported by the record here.

18  In this case, plaintiff's investigator stated that during the roughly 6-minute period he was

19  present in Centenial Bar, he observed only 10-11 patrons inside the establishment, which had the

20  capacity to hold "60+ people."  (Nushi Aff.)  The investigator noted that Centenial Bar showed

21  Plaintiff's Program on two (2) flat screen televisions in the bar area.  (Id.)  He also reported that

22  there was no cover charge for entry on the night in question.  (Id.)  Furthermore, there is no

23  evidence before the court that defendants promoted the fight's airing at the establishment, or that

24  a special premium on food and drink was charged on the night of the fight.  Indeed, with only 10-

---

25  [2] By comparison, 47 U.S.C. § 553 provides that "the party aggrieved may recover an award of
26  statutory damages for all violations involved in the action, in a sum of not less than $250 or more
    than $10,000 as the court considers just."  47 U.S.C. § 553(c)(3)(A)(ii).  Furthermore, "[i]n any
27  case in which the court finds that the violation was committed willfully and for purposes of
    commercial advantage or private financial gain, the court in its discretion may increase the award
28  of damages…by an amount of not more than $50,000."  47 U.S.C. § 553(c)(3)(B).

11 patrons in the establishment, it appears unlikely that Centenial Bar was doing any greater level of business on the night that Plaintiff's Program was shown than at any other time.  In light of this record, which lacks evidence of defendants reaping any significant commercial benefit from their piracy of Plaintiff's Program, the court recommends that plaintiff be awarded $1,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).

However, the court takes judicial notice of the fact that defendants have already violated 47 U.S.C. § 605 on at least *two* prior occasions – in two other actions that were previously filed in this court, defendants likewise defaulted on a claim pursuant to 47 U.S.C. § 605.  See J&J Sports Productions, Inc. v. Machuca et al., 2:13-cv-1076- JAM-KJN (E.D. Cal.); Joe Hand Promotions v. Machuca, 2:13-cv-1228-GEB-KJN (E.D. Cal.)  Because defendants' repeat violations are more indicative of willful conduct for purposes of commercial advantage or financial gain, and because such repeat violations suggest that increased deterrence is necessary, the court recommends that plaintiff be awarded an additional $5,000 in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), for a total of $6,000 in statutory damages, which the court finds appropriate under the circumstances here.  See J & J Sports Productions, Inc. v. Jurado, 2011 WL 6153605, at *4 (E.D. Cal. Dec. 12, 2011) (collecting awards in similar cases; awarding $1,000 in statutory damages and $3,000 in enhanced statutory damages in a default judgment where the defendant was not a repeat offender, but where the program at issue was broadcast to a larger number of patrons); Joe Hand Promotions v. Machuca, 2:13-cv-1228-GEB-KJN (E.D. Cal.), ECF Nos. 24, 26 (awarding enhanced damages of $3,000.00 based on *one* prior violation of 47 U.S.C. § 605).

### 2. Damages for Conversion

Plaintiff's motion for default judgment also seeks an award of $3,000.00 in compensatory damages for the state law tort of conversion.   Damages for conversion are measured by the value of the property at the time of the conversion. Cal. Civ. Code § 3336; see also Stan Lee Trading, Inc. v. Holtz, 649 F. Supp. 577, 581 (C.D. Cal. 1986); Spates v. Dameron Hosp. Ass'n, 114 Cal. App. 4th 208, 221 (2003).  In the context of broadcast piracy, damages for conversion have often been calculated based upon the amount that the defendant would have been required to pay for a proper sublicensing agreement.  See J & J Sports Prods., Inc. v. Jurado, 2011 WL 6153605, at *5

1    (E.D. Cal. Dec. 12, 2011); J & J Sports Productions, Inc. v. Ro, 2010 WL 668065, at *4 (N.D.

2    Cal. Feb. 19, 2010).

3           Here, the affidavit of plaintiff's president, Joseph M. Gagliardi, indicates, by reference to

4    Exhibit 2 to his affidavit, that defendants' establishment, which has a maximum occupancy of

5    about 60 people, would have been required to pay a sublicense fee of $3,000.00 to lawfully air

6    Plaintiff's Program.  (ECF No. 11-4, ¶ 8, Ex. 2.)  Accordingly, the court recommends an award of

7    $3000.00 on plaintiff's conversion claim.

8    CONCLUSION

9           In sum, the court finds that plaintiff is entitled to $6,000.00 in statutory damages (based

10   on its claim under 47 U.S.C. § 605) and $3,000.00 in compensatory damages (based on its claim

11   of conversion), for a total of $9,000.00.

12          Accordingly, IT IS HEREBY ORDERED that within three (3) days after these findings

13   and recommendations are filed, plaintiff shall serve a copy of the findings and recommendations

14   on defendants by mail at their last known address(es), and shall forthwith file proof of such

15   service on the court's docket.

16          IT IS ALSO HEREBY RECOMMENDED that:

17          1. Plaintiff's motion for default judgment (ECF No. 11) be granted in part.

18          2. Judgment be entered in plaintiff's favor, and against defendants jointly and severally, in

19   the amount of $9,000.00.

20          3. The Clerk of Court be directed to close this case.

21          These findings and recommendations are submitted to the United States District Judge

22   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

23   days after being served with these findings and recommendations, any party may file written

24   objections with the court and serve a copy on all parties.  Such a document should be captioned

25   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26   shall be served on all parties and filed with the court within fourteen (14) days after service of the

27   objections.  The parties are advised that failure to file objections within the specified time may

28   waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th

1    Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

2           IT IS SO ORDERED AND RECOMMENDED.

3    Dated:  October 12, 2016

4
5                                            KENDALL J. NEWMAN
                                             UNITED STATES MAGISTRATE JUDGE
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28